UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA   CASE NO. 8:24cr257 VMC-AAS

v.

EVA LEBEAU and
LORI LEBRECHT

18 U.S.C. § 2
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)



# INDICTMENT

The Grand Jury charges that:

## COUNT ONE
(Conspiracy to Defraud the United States and Pay Health Care Kickbacks)

### Introduction

At all times material to this Indictment:

### The Defendants and the Relevant Entities

1. Prestigious Senior Home Health, Inc. ("Prestigious") was a corporation formed under the laws of Florida with a principal place of business in Pinellas County, Florida, that purported to provide home health services. Prestigious held an account at Bank A ending in x8927 (the "Prestigious Account").

2. West Coast Therapy Specialist LLC ("WCT") was a limited liability company formed under the laws of Florida with a principal place of business in Pinellas County, Florida, that purported to provide physical therapy services. WCT did business under the fictitious name Q Med Consulting ("Q Med").

3. Defendant EVA LEBEAU owned and operated Prestigious. She was a resident of Pinellas County, Florida.

4. Defendant LORI LEBRECHT was a licensed nurse and the director of nursing at Prestigious. She was a resident of Pinellas County, Florida.

5. Person 1 was a physical therapist who operated and controlled WCT and Q Med. Person 1 was a resident of Pinellas County, Florida

6. Person 2 was a resident of Pinellas County, Florida.

7. Person 3 was a resident of Pinellas County Florida.

8. Person 4 was a resident of Pinellas County, Florida.

**The Medicare Program**

9. The Medicare Program ("Medicare") was a federally funded program that provided free and below-cost health care benefits to individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare & Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

10. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

11. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered, among others, certain eligible

home health care costs for medical services provided by a home health agency ("HHA") to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

12. Medicare "providers" included HHAs, physicians, and other health care providers who provided items services to beneficiaries. To bill Medicare, a provider was required to submit a Medicare Enrollment Application Form ("Provider Enrollment Application") to Medicare. The Provider Enrollment Application contained certifications that the provider was required to make before the provider could enroll with Medicare. Specifically, the Provider Enrollment Application required the provider to certify, among other things, that the provider would abide by the Medicare laws, regulations, and program instructions, including the Federal Anti-Kickback Statute, and that the provider would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare.

13. A Medicare "provider number" was assigned to a provider upon approval of the provider's Medicare Enrollment Application. A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

14. A Medicare claim was required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item,

3

or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; (e) the name of the referring physician or other provider; and (f) the referring provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

15. When submitting claims to Medicare for reimbursement, providers were required to certify that: (1) the contents of the forms were true, correct, and complete; (2) the forms were prepared in compliance with the laws and regulations governing Medicare; and (3) the services that were purportedly provided, as set forth in the claims, were medically reasonable and necessary, provided as represented, and not procured through the payment of illegal kickbacks and bribes.

16. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

**Medicare Coverage for Home Health Services**

17. Medicare only covered home health services, if, on the claimed dates of service:

   a. the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b. the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) intermittent skilled nursing care, (ii) physical therapy, (iii) speech-language pathology services, or (iv) continued occupational therapy;

c. the HHA must have been approved by Medicare (Medicare-certified); and

The beneficiary must either, (1) because of illness or injury, need the aid of supportive devices such as crutches, canes, wheelchairs, and walkers; the use of special transportation, or the assistance of another person in order to leave their place of residence; or (2) have a condition such that leaving his or her home is medically contraindicated. Additionally, there must exist a normal inability to leave home and leaving home must require a considerable and taxing effort.

**The Conspiracy**

18. From in or around June 2017, and continuing through in or around March 2020, in Pinellas County, in the Middle District of Florida, and elsewhere, the defendants,

> EVA LEBEAU and
> LORI LEBRECHT,

did knowingly and willfully combine, conspire, confederate, and agreed with each other and others known and unknown to the United States, to:

a. defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS, in their administration and oversight of Medicare; and

b. violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration,

5

including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of home health services for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

19. It was a purpose of the conspiracy for EVA LEBEAU, LORI LEBRECHT, and their co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to patient recruiters, including Person 1, Person 2, Person 3, and Person 4, in exchange for referring Medicare beneficiaries to Prestigious for purported home health services; (b) submitting and causing the submission of false and fraudulent claims to Medicare for home health services that Prestigious purported to provide to these recruited beneficiaries; (c) concealing and causing the concealment of the kickbacks and bribes; and (d) diverting proceeds of the conspiracy for their own personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means

20. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

    a. It was a part of the conspiracy that EVA LEBEAU, LORI LEBRECHT, and others offered and paid illegal kickbacks and bribes

6

to Person 1, Person 2, Person 3, Person 4, and others, in exchange for recruiting and referring Medicare beneficiaries to Prestigious for purported home health services.

b. It was further a part of the conspiracy that EVA LEBEAU, LORI LEBRECHT, Person 1, Person 2, Person 3, and Person 4, and others concealed and caused the concealment of the kickbacks and bribes through false writings and agreements, including sham contracts and invoices.

c. It was further a part of the conspiracy that EVA LEBEAU, LORI LEBRECHT, Person 1, Person 2, Person 3, and Person 4, and others caused approximately $2,009,376 to be billed to Medicare for home health services which were procured through illegal kickbacks and bribes.

d. It was further a part of the conspiracy that EVA LEBEAU, LORI LEBRECHT, Person 1, Person 2, Person 3, and Person 4, and others caused Medicare to pay approximately $1,319,847 to Prestigious for home health services which were procured through kickbacks and bribes.

**Overt Acts**

21. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Florida, at least one of the following overt acts, among others:

a. On or about June 19, 2019, EVA LEBEAU and LORI LEBRECHT, through Prestigious, paid and caused Person 3 to be paid approximately $320 as a kickback and bribe for the referral of Medicare patients for home health services.

b. On or about October 8, 2019, EVA LEBEAU and LORI LEBRECHT, through Prestigious, paid and caused Person 2 to be paid approximately $2,000 as a kickback and bribe for the referral of Medicare patients for home health services.

c. On or about January 13, 2020, EVA LEBEAU and LORI LEBRECHT, through Prestigious, paid and caused Person 4 to be paid approximately $2,450 as a kickback and bribe for the referral of Medicare patients for home health services.

d. On or about February 7, 2020, EVA LEBEAU and LORI LEBRECHT, through Prestigious, paid and caused Person 1 to be paid approximately $1,600 as a kickback and bribe for the referral of Medicare patients for home health services.

All in violation of Title 18, United States Code, Section 371.

### COUNTS TWO THROUGH FIVE
**(Payment of Health Care Kickbacks)**

22. Paragraphs 1 through 21 of Count One of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

23. On or about the date set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

EVA LEBEAU and<br>
LORI LEBRECHT,

aided and abetted by each other and others, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, to any person to refer an individual to a person for the ordering and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is Medicare, as set forth below:

| Count | Approx. Date of Kickback Payment | Approx. Kickback Amount | Description of Kickback Payment |
|---|---|---|---|
| TWO | October 8, 2019 | $2,000 | Check No. 3341 from Prestigious Account written to Person 2 |
| THREE | February 7, 2020 | $1,600 | Check No. 3536 from Prestigious Account written to Q-Med |

Each in violation of Title 42, United States Code, Section 1320a-7(b)(2)(A) and Title 18, United States Code, Section 2.

<b><u>FORFEITURE ALLEGATIONS</u></b>

1. The allegations contained in Counts One through Five are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

2. Upon conviction of a violation of Title 18, United States Code, Section 371, or a violation of, or criminal conspiracy to commit a violation of Title 42, United States Code, Section 1320a-7b, the defendants, EVA LEBEAU and LORI LEBRECHT, shall forfeit to the United States, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property to be forfeited as to defendant EVA LEBEAU includes, but is not limited to, the approximately $1,319,847.38 in proceeds obtained as a result of the commission of the offense.

4. The property to be forfeited as to defendant LORI LEBRECHT includes, but is not limited to, the approximately $109,422.78 in proceeds obtained as a result of the commission of the offense.

5. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

███████████████████
FOREPERSON

ROGER B. HANDBERG
United States Attorney

GLENN S. LEON
Chief, Fraud Section
Criminal Division, Department of Justice

*/s/ Reginald Cuyler Jr.*
Reginald Cuyler Jr., Trial Attorney
Charles Strauss, Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section

*/s/ Rachelle DesVaux Bedke*
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes

FORM OBD-34
June 24

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
## Tampa Division

THE UNITED STATES OF AMERICA

vs.

**EVA LEBEAU**
**LORI LEBRECHT**

## INDICTMENT

Violations:  18 U.S.C. § 2
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)

A true bill,

███████████████████
Foreperson

Filed in open court this 6th day of June 2024.

_____K. Nieves_____  — KARINA NIEVES
Clerk

Bail $_____

GPO 863 525