**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No. 24-CR-257-VMC**

**UNITED STATES OF AMERICA**

**v.**

**EVA LEBEAU,**

    **Defendant.**

_____/

## UNITED STATES' TRIAL BRIEF

The United States of America, by and through undersigned counsel, respectfully submits the following Trial Brief in advance of the trial date of April 7, 2025, to provide an overview of its case and outline evidentiary issues for the Court that may arise. This is a health care kickbacks case. The Government alleges that the defendant paid kickbacks to patient recruiters to obtain Medicare beneficiaries for whom the defendant's company, a home health agency, could bill for home health therapies. The Government does not allege that the health care services at issue were medically unnecessary or not rendered, nor has the Government charged health care fraud. The Government will not introduce evidence that home health services were not rendered or that the services were not medically necessary, which are not relevant to the elements of the offense at issue. This case is strictly about health care kickbacks and the conspiracy to pay them. Likewise, the defendant should not be permitted to introduce evidence that the Medicare beneficiaries actually needed or benefited from the services.

Page **1** of **12**

I.      **Factual Summary of the Government's Case**

Defendant Eva LeBeau is charged in the indictment with conspiracy to defraud the United States and offering and paying kickbacks to patient marketers in violation of 18 U.S.C. § 371 and two separate substantive counts of paying kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

The anticipated trial evidence will show that between June 2017 through March 2020, the defendant paid tens of thousands of dollars in illegal kickbacks to her co-conspirators in exchange for patient referrals to Prestigious Senior Home Health Care Inc. ("Prestigious"). A patient referral logbook seized during a search of the business premises will show the defendant was keeping track of how many patients were referred by four different patient recruiters. This served as a "kickback ledger," and on one page it listed the amounts each patient recruiter was paid per referral.

In June 2017, the defendant signed a written contract with co-conspirator Steven McDonald[1] ("Person 1" in the Indictment) to pay him a $400 kickback for each patient referral. In July 2019, the defendant attempted to conceal the illegal kickbacks by creating a sham contract with McDonald which concealed the kickback arrangement by stating he would be paid a flat-fee of $2,000, regardless of how many patients he referred. In reality, McDonald was expected to bring in five patient referrals per month for the $2,000 and was paid in cash for additional referrals. The kickback described in Count 2 was a payment to McDonald for referral of five Medicare beneficiaries at $400 per patient for home health services.

---

[1] Steven McDonald pleaded guilty on July 13, 2023, to a one-count Information of conspiracy to defraud the United States and to solicit and receive health care kickbacks, in violation of 18 U.S.C. § 371.

Similarly, the defendant had an agreement with Stephen Duvall[2] to pay him $100 for each patient referral. The defendant and Duvall attempted to conceal the illegal kickbacks by Duvall preparing sham invoices that stated the payments were for case conferences, management, and staff education, among other items. In reality, the payments were for the referral of Medicare beneficiaries. The kickback described in Count 3 was a payment to Duvall for the referral of 16 Medicare beneficiaries at $100 per-patient for home health services.

Checks written to McDonald and Duvall corroborate their kickback arrangements and match the kickback ledger. For instance, a check written on April 25, 2019, has "3 patients" in the memo line and a total amount of $1,200.00. Another check on May 7, 2019, has "Carlson-ref" in the memo line and a total amount of $400. Yet another check on August 2, 2019, has "7 pts" in the memo line and a total amount of $2,800. These checks, among others, are all consistent with the $400 per patient kickback arrangement the defendant had with McDonald. The checks written to Duvall were all multiples of $100, consistent with the $100 per patient kickback agreement he had with the defendant.

**The Indictment and Elements**

The defendant is charged with one count of conspiracy to defraud the United States and pay health care kickbacks in violation of 18 U.S.C. § 371 and two counts of paying health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

   A.  <u>Conspiracy to Defraud the United States and Pay Health Care Kickbacks</u>.

The elements of the offense charged in Count One is as follows: (1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan; (2) the defendant knew the

---

[2] Steven Duvall pleaded guilty on July 13, 2023 to a one-count Information of conspiracy to defraud the United States and to solicit and receive health care kickbacks, in violation of 18 U.S.C. § 371.

unlawful purpose of the plan and willfully joined in it; (3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. *See* Eleventh Circuit Criminal Pattern Jury Instructions, No. O13.1.

    B.  Offering or Paying Illegal Remunerations

The elements of the offense charged in Counts Two and Three of the indictment are as follows: (1) the defendant offered or paid any remuneration (including any bribe or kickback), directly or indirectly, openly or secretly; (2) the payment or offer of payment by the defendant was made to a person to induce that person to refer an individual to a person for the furnishing or arranging for the furnishing of an item or service that could be paid for, in whole or in part, by a Federal health care program; and (3) the defendant acted knowingly and willfully.

The Eleventh Circuit does not have a pattern jury instruction for this offense. The elements of the above instruction are based upon the language of the Federal Anti-Kickback Statute (42 U.S.C. § 1320a-7b) and the instructions given in the following cases, amongst others: There is no pattern instruction for this offense. These instructions were modeled from those given in multiple recent health care kickback cases in the Eleventh Circuit. *See, e.g., United States v. Patel*, 19-cr-80181-RAR (S.D. Fla. Dec. 14, 2022) (ECF No. 392); *United States v. Zusmer*, 21- cr-60253-KMM (S.D. Fla. Jan. 30, 2023) (ECF No. 356); *United States v. Scott*, 19-cr-00209- PGB-LHP (M.D. Fla. Jan. 8, 2021) (ECF No. 102); *United States v. Esformes*, 16-CR-20549- SCOLA (S.D. Fla. April 1, 2019) (ECF No. 1216); *United States v. Young*, 19-CR-6015 -RUIZ (S.D. Fla. Dec. 20, 2019) (ECF No. 126).

## II.     Trial

### A.  Length of Trial

The government expects that its case-in-chief will take two days, including cross-examination.

### B.  Witnesses

The government presently intends to call some or all of the following witnesses in its case-in-chief:[3]

1.  Dr. Shane Mull (Medicare program witness)

2.  Stephen Duvall (Cooperating witness)

3.  Steven McDonald (Cooperating witness)

4.  Lori Lebrecht (Cooperating witness)

5.  Rosie Westley (Office employee)

6.  Tracy Horsefield (Subcontractor)

7.  Tita Ravi (Subcontractor)

8.  Gregg Anderson (Case Agent)

## III.    Legal and Evidentiary Issues

The government anticipates the following legal and evidentiary issues may arise during trial.

### A.  Evidence of Medical Necessity and Compliance with Medical or Billing Guidelines Should be Excluded as Irrelevant, Prejudicial, and Improper Character Evidence.

The defendant may attempt to introduce irrelevant evidence to attempt to show that Prestigious rendered home health services, the services were of a high-quality, or that the services

---

[3] The government reserves the right to amend this witness list up until the date set by the Court's Scheduling Order and to the extent necessary to rebut evidence introduced by defendant.

were medically necessary. However, evidence about medical necessity and the manner in which the services were provided are irrelevant to the charges in the Indictment and should be excluded under Federal Rule of Evidence 401. Further, any documents showing the amount of work the defendant undertook or testimony that patients liked or needed her services does not make any fact of consequence about kickbacks more or less likely. Such evidence would only serve to confuse and prejudice the jury and should be excluded under Federal Rule of Evidence 403. Indeed, such evidence amounts to nothing more than propensity evidence that is inadmissible under Federal Rules of Evidence 404(a)(1) and 608(b).

The Government did not allege, nor will it allude, that Prestigious billed for services that were not rendered or not covered. Nor will the Government suggest that Prestigious billed for services that patients did not need. This will be strictly a trial about kickbacks; the Government will not introduce any evidence regarding lack of medical necessity. Therefore, any documents showing compliance with coverage requirements is not relevant to the elements of any charged offenses. Likewise, testimony from other marketers who may not have received kickbacks has no permissible use in negating whether the defendant paid kickbacks to Person 1 and Person 2 named in the Indictment.

Evidence that a criminal defendant did not break the law on other occasions is irrelevant. The Eleventh Circuit has repeatedly held that "[e]vidence of good conduct is not admissible to negate criminal intent." *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991); *see also United States v. Moreira*, 605 F. App'x 852, 859 (11 Cir. 2015) (per curiam); *United States v. Prine*, 569 F. App'x 859, 860 (11th Cir. 2014) (per curiam); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008). Thus, Defendant should be precluded from arguing or introducing: (i) instances of medically necessary billing; (ii) evidence that some Prestigious patients may have

liked or benefitted from Defendant's services; and (iii) that some marketers were not part of the kickback conspiracy.

For example, in *Moreira*, the jury convicted the defendant of various Medicare fraud and money laundering violations relating to a kickback scheme for a home health agency. 605 F. App'x at 854-57. The defendant sought to introduce evidence of her compliance with Medicare rules and regulations in support of her defense that she did not intend to defraud Medicare. *Id.* at 859. Under a plain-error standard, the Eleventh Circuit upheld the exclusion of such evidence as irrelevant— and thus inadmissible to negate criminal intent—because "[t]he Government did not charge and did not argue that there was no legitimate business conducted at the defendant's clinic." *Id.* The Court found that "evidence that some of the claims filed by [the clinic] may have been for services legitimately provided to eligible patients without the payment of kickbacks was irrelevant." *Id.*

Along these same lines, in *United States v. Hung Thien Ly*, which involved a doctor who was convicted for improperly dispensing controlled substances without a legitimate medical purpose, the Eleventh Circuit affirmed the district court's exclusion of evidence of the doctor's good conduct. 543 F. App'x 944, 946 (11th Cir. 2013). Specifically, the doctor in that case claimed that the district court erred by excluding evidence that he discharged or refused to treat certain patients who violated or were suspected of violating the doctor's protocols, which the doctor claimed demonstrated lack of criminal intent. *Id.* The Eleventh Circuit disagreed, holding that such evidence was "not probative of [the doctor's] intent with respect to the patients who received the drugs covered by the indictment." *Id.* The Court also emphasized that the introduction of evidence regarding patients who were not the subjects of the indictment "would have posed a significant risk of confusion of the issues." *Id.*

Applying these principles to the present case, any proof that the defendant conducted legitimate business outside of the conspiracy is impermissible good character evidence. The defendant's character is not an essential element of the charges. *See* Fed. R. Evid. 405(b). And the Government has not charged, nor will it argue, the defendant engaged in illegitimate medical practices. *See Moreira*, 605 F. App'x at 859. To be sure, the Government will argue that the patterns of kickbacks and bribes were widespread at Prestigious and would not have been possible without the defendant's conduct. But any attempts by the defendant to rely on isolated instances of legitimate marketing or patients who may have needed or benefited from Prestigious' services or referrals beyond what is alleged in the Indictment should be precluded under Rules 404 and 405. *See United States v. Stein*, 21-cr-20321-ALTONAGA (S.D. Fla. March 22, 2023) (granting motions *in limine* to exclude evidence of defendant providing legitimate services to patients whose claims were not at issue and exclude argument suggesting Medicare was negligent in paying fraudulent claims); *see also United States v. Young*, 19-cr-60157-RUIZ, D.E. 96 (S.D. Fla. Dec. 4, 2019) (granting motion *in limine* to preclude defendant from "presenting evidence regarding her 'state of mind for certain behavior' in the form of good conduct"); *United States v. Agresti*, 18-cr-80124-RUIZ, D.E. 350 (S.D. Fla. Jan. 18, 2022) (paperless order granting in part Government's motion *in limine* to exclude specific acts of good conduct in addiction treatment fraud case charging scheme to fraudulently bill excessive and medically unnecessary urinalyses); *United States v. Rosecan*, 20-cr-80052-RUIZ, D.E. 118 (S. D. Fla. May 12, 2022) (paperless order granting in part Government's motion *in limine* to exclude specific acts of good conduct and excluding wholly irrelevant acts of good conduct, but not excluding relevant conduct that rebutted evidence of the charged scheme); *United States v. Willner*, 11-cr-20100-SEITZ, D.E. 866 (S. D. Fla. April 13, 2012) (excluding evidence of legitimate billing).

B. Any Attempt at Introducing Evidence that Improperly Blames the Victim Should be Excluded.

To the extent that the defendant raises "blame the victim" defenses that, because the Centers for Medicare and Medicaid Services ("CMS") approved and paid claims or did not otherwise discover the defendant's illegal kickbacks, the defendant should not be held responsible, such evidence should be excluded. In addition to being wholly irrelevant and improper propensity evidence, this evidence should be excluded for the independent reason that evidence of Medicare's conduct has nothing to do with the defendant's guilt or innocence on kickback charges. A victim's negligence in failing to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009).[4] This concept holds true throughout criminal law. Bank robbers are not absolved of their crimes if the bank security systems are deficient; home invaders are not absolved if homeowners leave a key under the mat; and individuals who perpetrate Ponzi schemes are not innocent if their clients include sophisticated Wall Street brokers. There is no contributory negligence in criminal law.

The defendant cannot point her finger at the CMS, CMS contractors, or anyone else to excuse her own conduct. The Eleventh Circuit set forth this principle in *Svete* when it analyzed the section of the mail fraud statute which reads "any scheme or artifice to defraud." 556 F.3d at 1161–62. This same phrase is part of the health care fraud statute, 18 U.S.C. § 1347, which is modeled after the mail, bank, and wire fraud statutes. *United States v. Mermelstein*, 487 F. Supp. 2d 242,

---

[4] *See also United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) (negligence of victim in failing to discover fraud scheme is not a defense to criminal conduct); *United States v. Thomas*, 377 F.3d 232, 242-44 (2d Cir. 2004) (same) (collecting cases); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud.") (collecting cases).

254 n.2 (E.D.N.Y. 2007) ("The health care fraud statute is modeled after the bank fraud statute, 18 U.S.C. § 1344, and the bank fraud statute was modeled after the federal mail and wire fraud statutes, §§ 1341 and 1343."). Relying on this history and the Supreme Court's interpretation of "any scheme or artifice to defraud," the Eleventh Circuit, sitting *en banc*, explained:

> Because the focus of [a fraud] statute, like any other criminal statute, is on the violator. … a defendant who intends to deceive the ignorant or gullible by preying on their infirmities is no less guilty. … whatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces "<u>any</u> scheme or artifice to defraud." A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.

*Id.* at 1165 (emphasis in original) (internal citations omitted). Following the Eleventh Circuit in *Svete*, and various other Circuit courts,[5] this Court should exclude any discussion of the CMS or a CMS contractor's purportedly negligent conduct. Even if these entities were at fault—which they were <u>not</u>—such evidence would still be irrelevant, improper, and no defense to the charged scheme.

In addition to being irrelevant, evidence concerning the victim's conduct would be prejudicial under Rule 403. Allowing Defendant to argue that the CMS (or other state or federal agencies) were negligent in paying the claims at issue, or in failing to discover the fraud sooner, and that this somehow excuses her criminal conduct, would mislead the jury. Specifically, it could create the erroneous impression that in order to find the defendant guilty, the jury must find that

---

[5] *See Thomas*, 377 F.3d at 243-44 (rejecting argument that victim's foolishness vitiated defendant's fraudulent intent); *United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); *Amico*, 486 F.3d at 780; *see also United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." (*quoting United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980))).

the CMS should have discovered Defendant's misconduct or denied claims. Because that is not necessary under the law, Defendant should not be allowed to create such improper inferences. *See United States v. Young*, 19-cr-60157-RUIZ, D.E. 96 (S.D. Fla. Dec. 4, 2019) ("evidence suggesting that the [government programs at issue] were negligent in paying claims connected with the alleged kickback conspiracy, or failed to adequately prevent fraud, is not admissible"); *United States v. Agresti*, 18-cr-80124-RUIZ, D.E. 350 (S.D. Fla. Jan. 18, 2022) (paperless order granting in part Government's motion *in limine* to exclude "blame the victim" defenses in addiction treatment fraud case charging scheme to fraudulently bill excessive and medically unnecessary urinalyses).

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that (1) any evidence of medical necessity and compliance with medical or billing guidelines should be excluded as irrelevant, prejudicial, and improper character evidence, and (2) any attempt at introducing evidence that improperly blames the victim, Medicare, should be excluded.

Dated:

Respectfully submitted,

SARA C. SWEENEY ACTING UNITED STATES ATTORNEY

LORINDA LARYEA
ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:     *s/ Sandor A. Callahan*
      Sandor A. Callahan
      Charles Strauss
      Trial Attorneys
      United States Department of Justice
      Criminal Division, Fraud Section
      1400 New York Avenue, N.W.
      Washington, D.C. 20005
      Tel: (202) 597-0610 & (202) 230-0696
      Emails: sandor.callahan2@usdoj.gov
            charles.strauss@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 24, 2025, a true and correct copy of the foregoing was filed and served on all counsel of record via the CM/ECF system.

By:     *s/ Sandor A. Callahan*
      Sandor A. Callahan
      Charles Strauss
      Trial Attorneys
      United States Department of Justice
      Criminal Division, Fraud Section
      1400 New York Avenue, N.W.
      Washington, D.C. 20005
      Tel: (202) 597-0610 & (202) 230-0696
      Emails: sandor.callahan2@usdoj.gov
            charles.strauss@usdoj.gov